ORIGINAL

IN THE UNITED STATES DISTRICT COURT FILED IN CLERK'S OFFICE
FOR THE NORTHERN DISTRICT OF GEORGIA U.S.D.C. - Newnan
NEWNAN DIVISION

JAN 2 5 2011

James N. Hatten, Clerk
By: _____ Deputy Clerk

| | |
|---|---|
| PAMELA KRISTYN GRAY, Individually ) and as Representative of the Estate of ) HELEN M. GRAY; BRIAN RICHARD ) GRAY, Individually and as Representative ) of the Estate of HELEN M. GRAY, and ) the Estate of HELEN M. GRAY, ) ) Plaintiffs, ) ) v. ) ) HONDA MOTOR CO., LTD.; HONDA ) RESEARCH INSTITUTE JAPAN CO., ) LTD.; AMERICAN HONDA MOTOR ) CO., INC.; HONDA NORTH AMERICA, ) INC.; HONDA OF AMERICA MFG., ) INC.; HONDA R&D CO., LTD.; HONDA ) R&D AMERICAS, INC.; and LUKE ) DAVID WATERS, ) ) Defendants. ) | **3 11-CV-013** CIVIL ACTION FILE NO. _____ |

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COME NOW** Pamela Kristyn Gray, individually and as representative of

the Estate of Helen M. Gray, Brian Richard Gray, individually and as

representative of the Estate of Helen M. Gray, and the Estate of Helen M. Gray

(collectively referred to herein as "Plaintiffs") and file this Complaint against the

Defendants, showing this Honorable Court the following:

## I.    Statement of the Case

1.

Helen M. Gray was killed, and Pamela Kristyn Gray was severely injured, in a motor vehicle accident, which occurred on November 29, 2009, in Troup County, Georgia.  Plaintiffs bring claims against (1) the Honda entities, identified below, which manufactured and sold the subject Honda Odyssey minivan, for strict liability, negligent design, and negligent and fraudulent failure to warn, among other things; and (2) the striking driver, Luke David Waters, who rear ended the subject Odyssey, for failure to exercise reasonable care in the operation of his vehicle.

## II.    Parties, Jurisdiction and Venue

2.

Plaintiffs Pamela Kristyn Gray (hereinafter referred to as "Kristyn Gray") and Brian Richard Gray are residents of Georgia and subject to the jurisdiction and venue of this Court.

3.

Defendant Honda Motor Co., Ltd. is an alien corporation of Japan which transacts business in the State of Georgia and which has committed a tort outside the state causing injury within the state.  Defendant Honda Motor Co., Ltd. may be served by delivering a copy of the Summons and Complaint, pursuant to Federal

2

Rules of Civil Procedure 4(h)(2) and 4(f)(2)(C)(ii), Article 10(a) of the Convention

on the Service Abroad of Judicial and Extrajudicial Documents in Civil or

Commercial Matters (referred to herein as "the Hague Service Convention"), and

other applicable laws, to Honda Motor Co., Ltd., No. 1-1, Minami-Aoyama 2-

chome, Minato-Ku Tokyo 107-8556, Japan. Honda Motor Co., Ltd. may also be

served with process pursuant to Federal Rules of Civil Procedure 4(h)(2) and

4(f)(1), Article 3 of The Hague Service Convention, and other applicable laws,

through the Central Authority of Japan, Ministry of Foreign Affairs, 2-2-1

Kasumigaseki Chiyoda-ku, Tokyo, 100-8919, Japan. Honda Motor Co., Ltd. is

subject to the jurisdiction and venue of this Court pursuant to 28 U.S.C. §§ 1332

and 1391, O.C.G.A. §§ 9-10-91, 9-10-93, Ga. Const. Art. 6, § 2, ¶ IV, and other

applicable laws. Honda Motor Co., Ltd. has committed a tortious injury in this

state, it transacts business in this state, it regularly does or solicits business in this

state, and a substantial part of the events or omissions giving rise to these claims

occurred in this judicial district and division. This defendant shipped or

participated in shipping the subject vehicle to Georgia or with the expectation that

it would enter the Georgia stream of commerce. This defendant's business is

directly affected by sales transactions occurring in Georgia and it has benefited

from the protection of Georgia law and procedure. This defendant committed

3

purposeful actions which should have led it to reasonably anticipate being haled into Court in Georgia.

4.

Defendant American Honda Motor Co., Inc. is a foreign corporation authorized to transact business in the State of Georgia. It is subject to the jurisdiction and venue of this Court. Defendant American Honda Motor Co., Inc. may be served by delivering a copy of the Summons and Complaint to its registered agent for service of process, Richard A. Brown, Jr., 5 Glynn Ave., Brunswick, Georgia, 31520. American Honda Motor Co., Inc. is subject to the jurisdiction and venue of this Court pursuant to 28 U.S.C. §§ 1332 and 1391, Ga. Const. Art. 6, § 2, ¶ IV, O.C.G.A. § 14-2-510 and other applicable laws, because, among other things, it is authorized to transact business in Georgia and a substantial part of the events or omissions giving rise to these claims occurred in this judicial district and division.

5.

Defendant Honda North America, Inc. is a foreign corporation authorized to transact business in the State of Georgia. Defendant Honda North America, Inc. may be served by delivering a copy of the Summons and Complaint to its registered agent for service of process, Richard A. Brown, Jr., 5 Glynn Ave., Brunswick, Georgia, 31520. Defendant Honda North America, Inc. is subject to

the jurisdiction and venue of this Court pursuant to 28 U.S.C. §§ 1332 and 1391,

Ga. Const. Art. 6, § 2, ¶ IV, O.C.G.A. § 14-2-510 and other applicable laws,

because, among other things, it is authorized to transact business in Georgia and a

substantial part of the events or omissions giving rise to these claims occurred in

this judicial district and division.

6.

Defendant Honda of America Mfg., Inc. is a foreign corporation which

transacts business in the State of Georgia and which has committed a tort causing

injury within this state. Defendant Honda of America Mfg., Inc. may be served by

delivering a copy of the Summons and Complaint to its registered agent for service

of process, Statutory Agent Corp., 52 East Gay Street, Columbus, Ohio, 43215.

Defendant Honda of America Mfg., Inc. is subject to the jurisdiction and venue of

this Court pursuant to 28 U.S.C. §§ 1332 and 1391, Ga. Const. Art. 6, § 2, ¶ IV,

O.C.G.A. §§ 9-10-91, 9-10-93, and other applicable laws, because, among other

things, it has committed a tortious injury in this state, it transacts business in this

state, it regularly does or solicits business in this state, and a substantial part of the

events or omissions giving rise to these claims occurred in this judicial district and

division. This defendant shipped or participated in shipping the subject vehicle to

Georgia or with the expectation that it would enter the Georgia stream of

commerce. This defendant's business is directly affected by sales transactions

occurring in Georgia and it has benefited from the protection of Georgia law and procedure. This defendant committed purposeful actions which should have led it to reasonably anticipate being haled into Court in Georgia.

7.

Defendant Honda Research Institute Japan Co., Ltd. is an alien corporation of Japan, which transacts business in this state and which has committed a tort outside this state causing injury in this state. Defendant Honda Research Institute Japan Co., Ltd. may be served by delivering a copy of the Summons and Complaint pursuant to Federal Rules of Civil Procedure 4(h)(2) and 4(f)(2)(C)(ii), Article 10(a) of the Hague Service Convention, and other applicable laws, to this defendant at 8-1 Honcho, Wako-shi, Saitama, 351-0188, Japan. Defendant Honda Research Institute Japan Co., Ltd. may also be served with process pursuant to Federal Rules of Civil Procedure 4(h)(2) and 4(f)(1), Article 3 of the Hague Service Convention, and other applicable laws, through the Central Authority of Japan, Ministry of Foreign Affairs, 2-2-1 Kasumigaseki Chiyoda-ku, Tokyo, 100-8919, Japan. Defendant Honda Research Institute Japan Co., Ltd. is subject to the jurisdiction and venue of this Court pursuant to 28 U.S.C. §§ 1332 and 1391, Ga. Const. Art. 6, § 2, ¶ IV, O.C.G.A. §§ 9-10-91, 9-10-93, and other applicable laws, because, among other things, it transacts business in this state, it regularly does or solicits business in this state, it committed a tort which has caused injury in this

6

state, and a substantial part of the events or omissions giving rise to these claims occurred in this judicial district and division. This defendant shipped or participated in shipping the subject vehicle to Georgia or with the expectation that it would enter the Georgia stream of commerce. This defendant's business is directly affected by sales transactions occurring in Georgia and it has benefited from the protection of Georgia law and procedure. This defendant committed purposeful actions which should have led it to reasonably anticipate being haled into Court in Georgia.

8.

Defendant Honda R&D Co., Ltd. is an alien corporation of Japan, which transacts business in this state and which has committed a tort outside this state causing injury in this state. Defendant Honda R&D Co., Ltd. may be served by delivering a copy of the Summons and Complaint pursuant to Federal Rules of Civil Procedure 4(h)(2) and 4(f)(2)(C)(ii), Article 10(a) of the Hague Service Convention, and other applicable laws, to this defendant at 1-4-1, Chuo Wako-shi, Saitama-ken. Defendant Honda R&D Co., Ltd. may also be served with process pursuant to Federal Rules of Civil Procedure 4(h)(2) and 4(f)(1), Article 3 of the Hague Service Convention, and other applicable laws, through the Central Authority of Japan, Ministry of Foreign Affairs, 2-2-1 Kasumigaseki Chiyoda-ku, Tokyo, 100-8919, Japan. Defendant Honda R&D Co., Ltd. is subject to the

7

jurisdiction and venue of this Court pursuant to 28 U.S.C. §§ 1332 and 1391, Ga. Const. Art. 6, § 2, ¶ IV, O.C.G.A. §§ 9-10-91, 9-10-93, and other applicable laws, because, among other things, it transacts business in this state, it regularly does or solicits business in this state, it committed a tort which caused injury in this state, and a substantial part of the events or omissions giving rise to these claims occurred in this judicial district and division. This defendant shipped or participating in shipping the subject vehicle to Georgia or with the expectation that it would enter the Georgia stream of commerce. This defendant's business is directly affected by sales transactions occurring in Georgia and it has benefited from the protection of Georgia law and procedure. This defendant committed purposeful actions which should have led it to reasonably anticipate being haled into Court in Georgia.

9.

Defendant Honda R&D Americas, Inc. is a foreign corporation authorized to transact business in Georgia but in a "revoked" status. Its principal office is located at 1900 Harpers Way, Torrance, CA 90501-1521. Defendant Honda R&D Americas, Inc. may be served by delivering a copy of the Summons and Complaint to its registered agent, CT Corporation System, 1201 Peachtree Street, Atlanta, Georgia 30361. Alternatively, Defendant Honda R&D Americas, Inc. may be served through the Georgia Secretary of State pursuant to O.C.G.A. § 14-2-1531.

8

Defendant Honda R&D Americas, Inc. is subject to the jurisdiction and venue of this Court pursuant to 28 U.S.C. §§ 1332 and 1391, Ga. Const. Art. 6, § 2, ¶ IV, O.C.G.A. § 14-2-510 and other applicable laws because, among other things, it transacts business in this state, it regularly does or solicits business in this state, it committed a tort causing injury in this state, and a substantial part of the events or omissions giving rise to these claims occurred in this judicial district and division. This defendant shipped or participated in shipping the subject vehicle to Georgia or with the expectation that it would enter the Georgia stream of commerce. This defendant's business is directly affected by sales transactions occurring in Georgia and it has benefited from the protection of Georgia law and procedure. This defendant committed purposeful actions which should have led it to reasonably anticipate being haled into Court in Georgia.

10.

Defendant Luke David Waters is a resident of Alabama. Defendant Waters may be served with process at his last known address, 758 Edwards Avenue, Fairhope, Alabama, 36532. Alternatively, Defendant Waters may be served with process through the Georgia Secretary of State in compliance with O.C.G.A. § 40-12-2. Defendant Waters is subject to the jurisdiction and venue of this Court pursuant to 28 U.S.C. §§ 1332 and 1391, Ga. Const. Art. 6, § 2, ¶ IV, O.C.G.A. §§ 40-12-1, et seq., and 9-10-91, et seq., and other applicable laws, because, among

9

other things, he is a nonresident motorist and he committed a tortious act or

omission within this state, and a substantial part of the events or omissions giving

rise to these claims occurred in this judicial district and division.

11.

The defendants identified in Paragraphs 3 - 9 all jointly participated in the

design, manufacturing, testing and marketing of the subject Honda Odyssey

addressed in this Complaint, and all are liable for the damages set forth below.

These defendants are referred to collectively herein as "Honda."

12.

All parties are subject to the jurisdiction and venue of this Court pursuant to

28 U.S.C. §§ 1332 and 1391, Ga. Const. Art. 6, § 2, ¶ IV, O.C.G.A. §§ 40-12-1, et

seq., and 9-10-91, et seq., and other applicable laws, because, among other things,

the subject accident occurred in this judicial district and division, the matter in

controversy exceeds the sum or value of $75,000, exclusive of interest and costs,

and this case is between citizens of different States.

### III.    Statement of Facts

13.

Plaintiffs Pamela Kristyn Gray and Brian Richard Gray are the surviving

parents of Helen Gray, who died as a result of injuries she sustained in this

accident.  Kristyn and Brian Gray are the legal representative of the Estate of

10

Helen Gray and they are the proper parties to bring claims on behalf of the Estate
of Helen Gray.

14.

On November 29, 2009, Kristyn Gray was riding in the front passenger seat
of her family's 2001 Honda Odyssey minivan ("the subject Odyssey"). Kristyn's
husband, Brian Gray, was driving the minivan and the couple's two-year-old
daughter, Helen Gray, was riding in a child safety seat installed on the middle row,
behind the driver's seat. At approximately 4:40 p.m. on November 29, 2009, the
Gray family was traveling north on Interstate 85 in Troup County, Georgia. As the
Gray vehicle began to slow down in keeping with the flow of traffic, Defendant
Waters rear-ended the Gray's Odyssey with his 2004 Chevrolet Tahoe. Following
the initial impact between the Odyssey and Tahoe, the Odyssey moved forward
and into another vehicle.

15.

Kristyn Gray was wearing her seat belt at the time of the subject accident.
Helen Gray was properly restrained in a child safety seat at the time of the subject
accident.

16.

Kristyn Gray was seated in the subject Odyssey with her seat back in a
partially reclined position at the time of the subject accident.

11

17.

The subject Odyssey was defective and unreasonably dangerous because it was not capable of safely absorbing and dissipating the energy of foreseeable impacts, including the subject accident. The subject Odyssey also was not compatible with the striking Tahoe, allowing the Tahoe to impact the "soft skin" or body of the Odyssey, rather than the bumper or energy absorption and dissipation system. The bumper and energy absorption and dissipation system of the Odyssey were structurally deficient and improperly limited in size. The subject Odyssey was not crashworthy and it failed to safely absorb and dissipate the energy of this foreseeable accident.

18.

As a result of the defects in the subject vehicle, the striking Tahoe engaged the subject Odyssey above the Odyssey's bumper and structural frame and penetrated the "soft skin" of the Odyssey's body in a manner that resulted in severe injuries to Helen and Kristyn Gray, which they would not have otherwise sustained in this foreseeable collision.

19.

As a result of the defects and dangers inherent in Honda's design and manufacture of the subject Odyssey, Helen Gray suffered severe injuries and,

12

ultimately, a wrongful death, and Kristyn Gray suffered debilitating injuries, including paralysis.

20.

Kristyn Gray's occupant restraint system failed in this accident due to the partially reclined position of her seat back. As a result of this failure, Kristyn Gray was ejected from her seat.

21.

Due to the failure of the defective occupant restraint system of the Honda Odyssey, Kristyn Gray suffered severe injuries.

22.

At all times material to this Complaint, Kristyn Gray was seated and restrained in the subject Odyssey in a manner that is consistent with Honda's design, instructions, and intended use of the vehicle.

23.

Defendant Honda designed, manufactured, distributed, marketed and sold the subject Odyssey, including the seat and occupant restraint system.

24.

Defendant Honda has known for years that the incompatibility of vehicles involved in foreseeable accidents results in increased occupant injuries and deaths.

13

Defendant Honda has known for years that the failure of its vehicles to safely absorb and dissipate energy in a foreseeable impact results in increased occupant injuries and deaths.

25.

Among other things, Honda has known for years that, when a vehicle is rear-ended at a height exceeding the vehicle's energy absorption and dissipation system, the vehicle will not safely absorb and dissipate energy.

26.

Defendant Honda has known for years that passengers who have their seat backs reclined are at an increased risk of injury because even partially reclining the seat back undermines the occupant restraint system.

27.

Among other things, Honda has known for years that, in a rear-end impact, a front seat passenger with her seat reclined is unreasonably vulnerable to being ejected.

28.

Defendant Honda consciously designed the subject Odyssey so that its energy absorption system would not be utilized in foreseeable impacts, even though Honda knew that this decision would result in injuries to, and deaths of, occupants of Honda vehicles.

14

29.

Defendant Honda consciously designed the subject Odyssey so that the body or "soft skin" of the vehicle was incapable of safely absorbing and dissipating energy in foreseeable impacts, even though Honda knew that this decision would result in injuries to, and deaths of, occupants of Honda vehicles.

30.

Defendant Honda consciously designed the subject Odyssey so that its front passenger seat back could be partially or completely reclined while the vehicle was in use, even though Honda knew that even partially reclining the seat back undermined the vehicle's occupant restraint system and subjected the occupant to an unacceptably high risk of severe injury.

31.

Honda knew or should have known that, having chosen a defective design in terms of the reclining seat back, assembly of its occupant restraint system, vehicle incompatibility, and poor structural integrity and energy absorption and dissipation, Honda was required to take other design steps to guard against the dangers of these defective designs.

32.

Despite knowledge of the need to guard and protect occupants from injuries resulting from reclined seat backs, Honda knowingly designed the seat and

15

restraint system of the subject Odyssey with no safeguard to protect occupants from failures of the occupant restraint system as a result of having a reclined seat back.

33.

Despite knowledge of the need to guard and protect occupants from occupant restraint system failure due to a reclined seat back, Honda knowingly designed the subject Odyssey with no interlock or other protective device of any kind which would reduce or eliminate the hazards of riding with a reclined seat back.

34.

Despite knowledge of the need to guard and protect occupants from incompatibility and poor energy absorption and dissipation, Honda knowingly designed the subject Odyssey without adequate structural protection and energy absorption and dissipation.

35.

After knowingly selecting a defective and dangerous occupant restraint system design, seat back design, and energy absorption and dissipation design, Honda compounded its design error by failing to guard against the known consequences of these designs.

16

36.

At the time of manufacture of the subject Odyssey, Honda knew that its decision not to utilize effective protective features to guard against restraint system failures due to reclined seat backs would increase the number and severity of occupant injuries in motor vehicle accidents.

37.

At the time of manufacture of the subject Odyssey, Honda knew that its decision not to incorporate an effective energy absorption and dissipation design into the subject Odyssey would increase the number and severity of occupant injuries in motor vehicle accidents.

38.

Honda knew or should have known, prior to manufacturing the subject Odyssey, and Honda has further learned since the manufacture of the subject Odyssey, that Honda vehicles with a low rate of compatibility and ineffective energy absorption and dissipation systems will cause severe injuries and deaths at reasonably foreseeable speeds.

39.

Honda knew or should have known, prior to manufacturing the subject Odyssey, and Honda has further learned since the manufacture of the subject Odyssey, that reclining the front passenger seat of Honda vehicles, including the

17

subject Odyssey, will cause occupant restraint system failures and ejections in rear-end collisions at reasonably foreseeable speeds.

40.

After having knowingly designed the unreasonably dangerous occupant restraint system of the subject Odyssey, Honda knew or should have known that it needed to adequately warn consumers of the dangers of being in an accident while riding with an even partially reclined seat back.

41.

After having knowingly designed the unreasonably dangerous energy absorption and dissipation system of the subject Odyssey, Honda knew or should have known that it was required to adequately warn consumers of the absence of effective protection and the resulting danger of injury in a foreseeable collision.

42.

After having chosen not to include effective protective devices to guard against the dangerous consequences of being in an accident with a reclined seat back, Honda knew or should have known that it was required to adequately warn consumers of the absence of such effective protective devices and the resulting danger of injury in a foreseeable collision.

18

43.

Despite the knowledge set forth in the paragraphs above, Honda willfully, wantonly, and recklessly chose not to provide any adequate warning to the consuming public in general, or the Gray family in particular, at any time since the manufacture of the subject Odyssey, of the dangers of being in an accident with a reclined seat back.

44.

Despite the knowledge set forth in the paragraphs above, Honda willfully, wantonly, and recklessly chose not to provide any adequate warning to the consuming public in general, or to the Gray family in particular, at any time since the manufacture of the subject Odyssey, of the dangers of being in a foreseeable accident lacking vehicle compatibility or of the dangers of riding in a vehicle that is incapable of safely absorbing and dissipating the energy of foreseeable impacts.

45.

At the time of the manufacture of the subject Odyssey, Honda knew or should have known of other technologically feasible, economically practicable, and fundamentally safer alternative designs for the occupant restraint system of the subject Odyssey that would have removed or reduced the dangers associated with a reclined seat back.

19

46.

At the time of the manufacture of the subject Odyssey, Honda knew it was technologically feasible, economically practicable, and fundamentally safer to redesign the Honda to prevent seat back recline and/or the occupant restraint system failures associated with seat back recline.

47.

Despite knowing that safer alternative designs were technologically feasible, economically practicable, and fundamentally safer at the time of the manufacture of the subject Odyssey, Honda willfully, wantonly, and recklessly chose not to implement an alternative design and instead chose a defective design that unreasonably exposed occupants such as Kristyn Gray to severe injury.

48.

At the time of the manufacture of the subject Odyssey, Honda knew or should have known of other technologically feasible, economically practicable, and fundamentally safer alternative designs for the energy absorption and dissipation of the subject Odyssey that would have removed or reduced the dangers associated with vehicle incompatibility and with the failure to safely absorb and dissipate energy in foreseeable collision, including increasing the dimensions, rigidity and strength of the bumper and energy absorption and dissipation system.

20

49.

Despite its knowledge of the defective and dangerous condition of the subject Odyssey, Honda willfully, wantonly and recklessly continued to sell the vehicle as designed to the consuming public and maintained it in the stream of commerce without a warning, recall or remedy of the defects and dangers.

50.

At the time of the manufacture of the subject Odyssey and at all times since then, Honda has known that its vehicles will be involved in rear-end collisions at foreseeable highway speeds.

51.

At the time of the manufacture of the subject Odyssey and at all times since then, Honda has had actual knowledge (from, among other things, its notice of real world incidents involving its vehicles, its own testing, and the laws of physics) that occupants of Honda vehicles involved in rear-end collisions will be subject to physical forces that cause them to move rearward relative to the vehicle and into the seat backs of the seats in which they are sitting.

52.

At the time of the manufacture of the subject Odyssey and at all times since then, Honda has had actual knowledge (from, among other things, its notice of real world incidents involving its vehicles, its own testing, and the laws of physics) that

21

when a seat back is not sufficiently upright in a rear-end collision, the occupant's lap belt and shoulder harness provided in the vehicle and located in front of the occupant will not prevent an occupant from moving rearward.

53.

At the time of the manufacture of the subject Odyssey and at all times since then, Honda has had actual knowledge (from, among other things, its notice of real world incidents involving its vehicles, its own testing, and the laws of physics) that when a seat back is not or does not remain sufficiently upright in a rear-end collision and an occupant moves into the rear of the vehicle, such an occupant can and will be involved in second impacts within the vehicle, subjecting the occupant to an unreasonable danger of severe injury.

54.

At the time of the manufacture of the subject Odyssey and at all times since then, Honda has had actual knowledge (from, among other things, its notice of real world incidents involving its vehicles, its own testing, and the laws of physics) that vehicle occupants are subjected to enhanced and unreasonable danger when the vehicle lacks a functional energy absorption and dissipation system or when the vehicle is incompatible with the striking vehicle.

55.

At the time of the accident, Plaintiffs were unaware that the subject Odyssey was defective and unreasonably dangerous.

56.

Because of the defects and dangers identified above, Kristyn Gray was ejected from her seat, suffering severe and crippling injuries, and Helen Gray was killed. Kristyn and Helen Gray suffered extreme and conscious shock, terror, fright, and physical and mental pain and suffering.

57.

Because of the defects and dangers identified above, Brian Gray has suffered, and will continue to suffer, personal injury and a loss of consortium. Among other things, his wife's lower body is paralyzed as a result of the injuries she sustained in this accident.

58.

Because of the defects and dangers identified above, Kristyn and Brian Gray suffered severe and extreme emotional distress as a result of witnessing the injuries to, and the death of, their two-year-old daughter, Helen Gray.

59.

The injuries Kristyn Gray, Helen Gray, and Brian Gray sustained on

November 29, 2009 and thereafter, as described above, were proximately caused

by the tortious acts and omissions of the defendants, jointly and severally.

60.

The defects and unreasonable dangers present in the subject Odyssey caused

Kristyn's and Helen's injuries to be far more severe than they would have been in

this accident in the absence of such defects and unreasonable dangers.

## IV. Causes of Action
## Count One
## (Honda's Negligent Design)

61.

Plaintiffs incorporate by reference the allegations contained in Paragraphs 1

- 60 as if set forth herein.

62.

Defendant Honda had a duty to exercise reasonable care to design, engineer,

test, manufacture, inspect, market, distribute, and sell the subject Odyssey.

Defendant Honda breached its duty to exercise reasonable care. Among other

things, Defendant Honda designed unreasonable hazards into the vehicle and failed

to utilize economical and technologically available safety design alternatives in the

design of the subject Odyssey that would have prevented injury to the Plaintiffs.

24

63.

The subject Odyssey was designed, manufactured, distributed and sold by Defendant Honda in a defective and unreasonably dangerous condition. The defective and unreasonably dangerous condition included, but was not limited to, a defective design which allowed the front seat passenger to recline the seat back during vehicle operation and thereby undermine or completely negate the passenger's occupant restraint system, and a defective design which caused the vehicle to be incompatible with the striking Tahoe and to fail to safely absorb and dissipate the energy of this accident.

64.

The subject accident and injuries to Kristyn and Brian Gray, and the injuries to and the death of Helen Gray, were reasonably foreseeable to Defendant Honda. Defendant Honda's failure to exercise reasonable care proximately caused the injuries to Kristyn and Brian Gray, and the injuries to and the death of Helen Gray.

**Count Two**
**(Honda's negligent failure to warn)**

65.

Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 - 64 as if set forth herein.

66.

As a manufacturer of vehicles distributed and sold to the public, Defendant Honda has a duty to warn the public adequately of, and to remedy, defective and unreasonably dangerous conditions in its vehicles.

67.

Defendant Honda failed to warn the public adequately of, and failed to remedy, the known defective and unreasonably dangerous conditions in the subject Odyssey, and thereby breached its duty and obligation to the consuming public generally, and to the Gray family, individually.

68.

Defendant Honda's failure to warn the public and the Gray family adequately of the known defective and unreasonably dangerous conditions in the subject Odyssey, and failure to remedy those conditions, proximately caused the injuries to Kristyn and Brian Gray, and the injuries to and death of Helen Gray.

## Count Three
## (Strict Liability of Honda)

69.

Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 - 68 as if set forth herein.

26

70.

For all of the reasons described in detail above, Defendant Honda is strictly liable to Plaintiffs because the defective Honda Odyssey was not merchantable and was not reasonably suited to the use intended, and its condition when sold was the proximate cause of the injuries sustained by the Plaintiffs.

## Count Four
### (Honda's Liability for Punitive Damages)

71.

Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 - 70 as if set forth herein.

72.

Honda's conduct shows willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences. Such conduct includes, but is not limited to, (a) Honda's decision to design, market and sell the subject Odyssey despite knowing that the vehicle's passenger restraint system was defective and that even partially reclined passengers such as Kristyn Gray would be subject to severe injury in foreseeable collisions as a result of being ejected from the passenger seat, (b) Honda's decision to design, market and sell the subject Odyssey despite knowing that the vehicle was defective in that it could not safely absorb and dissipate the energy of foreseeable rear-end impacts, (c) Honda's decision not to

27

implement feasible alternative designs that would have eliminated or reduced the defects and dangers caused by reclining the front passenger seat back of this vehicle, (d) Honda's decision not to implement feasible alternative designs that would have eliminated or reduced the defects and dangers caused by the vehicle's inability to safely absorb and dissipate the energy of foreseeable rear-end impacts, (e) Honda's decision not to warn the consuming public, including the Gray family, that moderately reclining one's seat back can undermine or completely negate the occupant restraint system and result in severe and debilitating injuries in foreseeable collisions, and (f) Honda's decision not to warn the consuming public, including the Gray family, that this vehicle was structurally deficient and unable to properly absorb and dissipate the forces caused by foreseeable impacts.

73.

Punitive damages are required to punish, penalize, and deter Honda.

## Count Five
### (Negligence of Defendant Waters)

74.

Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 - 73 as if set forth herein.

28

75.

Defendant Waters had a duty to exercise reasonable care in the operation of his vehicle in a manner so as not to cause harm or injury to other drivers on public roadways.

76.

Defendant Waters breached his duty by failing to operate his vehicle in a safe and prudent manner, by failing to keep a proper lookout ahead, by following too closely, and by failing to keep his vehicle under control so as to avoid colliding with the rear of the Gray vehicle.

77.

Defendant Waters' failure to exercise reasonable care caused the rear end collision to the subject Odyssey and, together with Honda's acts and omissions, proximately caused injuries to Kristyn and Helen Gray.

**Count Six**
**(Negligent Infliction of Emotional Distress Against All Defendants)**

78.

Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 - 77 as if set forth herein.

79.

As a direct and proximate result of the aforementioned conduct of the Defendants, Kristyn and Brian Gray suffered physical injury and severe emotional

29

distress because, among other things, they witnessed the injury to, and the death of, their two-year-old daughter.

## Count Seven
## (Loss of Consortium Against All Defendants)

80.

Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 - 79 as if set forth herein.

81.

As a direct and proximate result of the aforementioned conduct of the

Defendants, Brian Gray has suffered, and continues to suffer, a loss of consortium.

Among other things, his wife, Kristyn Gray, was paralyzed as a result of the

injuries she sustained in this accident.

## V.     Compensatory Damages

82.

Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 - 81 as if set forth herein.

83.

Plaintiffs are entitled to recover general damages and special damages jointly and severally from the Defendants.

84.

As a direct and proximate result of the aforementioned conduct of the Defendants, Plaintiff Kristyn Gray has suffered, and continues to suffer, debilitating physical injury, pain and suffering.

85.

As a direct and proximate result of the aforementioned conduct of the Defendants, Plaintiffs have suffered physical and mental pain and suffering.

86.

As a direct and proximate result of the aforementioned conduct of the Defendants, Kristyn Gray has incurred, and continues to incur, medical expenses and costs of her life care, lost earnings, and other special damages.

87.

As a direct and proximate result of the aforementioned conduct of the Defendants, Helen Gray suffered severe physical and mental pain and suffering before she died a wrongful death. As a further result of the tortious conduct of the Defendants, medical expenses and the expenses of funeral and burial have been incurred by the Estate of Helen Gray.

88.

Brian and Kristyn Gray are entitled to recover for the full value of the life of Helen Gray, such value to be determined by the enlightened conscience of the jury.

31

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for the following relief:

(a) That Summons and Process issue and that the Defendants be served with Summons and a copy of this Complaint as provided by law;

(b) That Plaintiffs be awarded damages jointly and severally from the Defendants for all general damages to which they are entitled under the law in such an amount as may be determined by the enlightened conscience of the jury and as shown by the evidence;

(c) That Plaintiffs be awarded damages for all special damages to which they are entitled under the law, including medical expenses, costs of life care and lost earnings, in such an amount as may be determined by the enlightened conscience of the jury and as shown by the evidence;

(d) That punitive damages be assessed against Defendant Honda in an amount sufficient to punish and deter Honda and others from engaging in such conduct in the future;

(e) That Plaintiffs have a trial by jury;

(f) That the Court charge the Defendants with all court costs attributable to this action and such other costs reasonably incurred in the prosecution of the trial of this case; and

(g) That Plaintiffs be granted such other and further relief as may be supported

by the evidence and as this Court deems just and proper.


Respectfully submitted this $25^{st}$ day of January, 2011.


s/    *Andrew M. Scherffius*

Andrew M. Scherffius
Georgia Bar No. 629150
Gregory R. Feagle
Georgia Bar No. 256913


**SCHERFFIUS, BALLARD, STILL & FEAGLE LLP**
400 Colony Square, Suite 1018, 1201 Peachtree Street, NE
Atlanta, GA   30361
(404) 873-1220

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 5.1B

I hereby certify that the within and foregoing COMPLAINT AND

DEMAND FOR JURY TRIAL has been computer processed with 14-point Times

New Roman font in compliance with N.D.G.A. Local Rule 5.1B.

Respectfully submitted this $25^{st}$ day of January, 2011.

s/    *Andrew M. Scherffius*

Andrew M. Scherffius
Georgia Bar No. 629150
Gregory R. Feagle
Georgia Bar No. 256913

## SCHERFFIUS, BALLARD, STILL & FEAGLE LLP
400 Colony Square, Suite 1018
1201 Peachtree Street, NE
Atlanta, GA  30361
(404) 873-1220

34